STEPHEN BULL and Others v. HORACE S. RICH.[1]

SAME v. SILAS B. FOOT.

July 1, 1904.

Nos. 13,938–13,940—(174, 176).

**Sureties on Bond—Settlement with Heir of Principal.**
    The guardian of certain minors having defaulted upon his bond, a portion of the sureties paid to the obligees the amount of the liability, and filed their claim against the estate of the deceased principal, and then entered into a contract with the heir of the principal whereby they with-

[1] Reported in 100 N. W. 212; 101 N. W. 489.

drew their claims from the estate without participating in dividends, and received in lieu thereof certain personal property and securities in full satisfaction of their claim as against the estate. In an action by them against their co-sureties for contribution, *held*, the transaction amounted to no more than a payment by the guardian estate to reduce the liability, and did not amount to a release of the principal, in the sense that the co-sureties were released from their liability upon the bond.

Separate actions in the district court for Goodhue county by the same plaintiffs against defendants Horace S. Rich and Silas B. Foot, to enforce contribution by defendants to the extent of their respective liabilities as co-sureties with plaintiffs upon certain guardian's bonds. The cases were tried together before Williston, J., who made findings of fact and as conclusions of law found that plaintiffs were entitled to recover from defendant Rich the sum of $4,964.37 and from defendant Foot the sum of $6,285.01. From judgments entered pursuant to the findings, defendants appealed. The appeals were argued and submitted together. Affirmed.

*O. M. Hall, F. W. Foot,* and *Chas. C. Willson,* for appellants.

*A. E. Boyesen,* for respondents.

LEWIS, J.

November 21, 1882, Edward L. Baker was appointed by the county court at Racine, Wisconsin, guardian of his two minor nephews, Robert H. and Charles H. Baker, and executed bonds as guardian in the sum of $40,000, afterwards increased to $160,000. Plaintiffs, residing at Racine, Wisconsin, were sureties on the additional bonds for $120,000, and defendants, at Red Wing, Minnesota, were sureties upon the original bonds for $40,000. The guardian died December 21, 1891, at Racine, and his administrator was duly appointed by the county court, and, upon the settlement of his accounts as guardian, it was found he was indebted to his wards about $60,000, whereupon plaintiffs paid the wards the entire amount of their liability upon the bonds, and filed their claim for the same against the guardian's estate. The guardian's administrator realized from the estate, in cash, the net sum of $16,473.88, and there were left on hand two pieces of land, the value of which does not appear, and a list of securities of uncertain value, called "rejected securities."

The guardian Edward L. Baker left as his sole heirs at law two children, Charles M. Baker and Mary L. Harris, and the latter assigned to her brother all her right, title, and interest in the estate. Thereafter, on August 25, 1893, the heir, Charles M. Baker, entered into an agreement with the Racine sureties, plaintiffs herein, whereby he assigned to them the property described in the list of rejected securities, and, as further security for their claim, assigned to them 8,333 shares of mining stock owned by the estate, and $10,000 of Rialto bonds owned by Charles M. Baker in his own right, in consideration of which the plaintiffs agreed to withdraw their claims and release the estate, the administrator, and the assets in his hands from all liability on account thereof. October 30 following, plaintiffs filed a release, which was of date August 10, 1893, and on the same day the county court made and filed a decree of settlement of the guardian's estate, and by that decree the remainder of personal property on hand, amounting to $16,473.88, and the real estate remaining unsold, together with all other property, was assigned to the heir, Charles M. Baker, and the list of rejected securities was also assigned to him, subject to the rights of plaintiffs; the decree reciting that the claims of plaintiffs had been withdrawn.

This action was commenced by the Racine sureties against the Red Wing sureties to compel contribution of the amount of their liability as co-sureties upon the guardian's bonds. The main defense interposed was that, by releasing the estate of the guardian from liability, plaintiffs also released their co-sureties, the defendants in this action; and, as we understand the case, the defendants rest their appeal entirely upon this proposition. The trial court found that the agreement of settlement was entered into between the Racine sureties and the heir of the guardian, as stated, and it is conceded that by such settlement the plaintiffs secured practically all that could have been obtained, had no settlement been made, and had the claim been allowed to draw its proportion of all dividends. It is conceded that the full amount secured by plaintiffs was applied upon their claim. The trial court determined the value of the property received in settlement with the estate, and deducted the amount so found from the amount paid by plaintiffs, leaving a balance of $45,017.50, and held defendants liable as co-sureties for one-fourth thereof.

This state of facts being conceded, there is but a single proposition of law before the court, viz., what was the effect of the settlement by the Racine sureties with the heir of the guardian? The release executed by respondents reads:

> State of Wisconsin, Racine County Court. In the Matter of the Estate of Edward L. Baker, Deceased. For value received, the undersigned creditors of said estate hereby withdraw their respective claims heretofore proved and allowed in said matter, one in favor of the undersigned Stephen Bull for $30,000, and one in favor of the heirs of J. I. Case, deceased, for $30,000, and hereby release the adminstrator of the estate of Edward L. Baker, deceased, from any liability on account thereof, not hereby releasing said claims or any securities received to apply thereon.

We need not decide whether it is possible for a co-surety to release the estate of a deceased principal to the same extent and purpose as might be done with the principal himself were he alive. We are clearly of the opinion that the transaction which took place between plaintiffs, the heir, and the administrator was not intended and did not amount to a release of the principal in the ordinary sense. Neither is there involved in this question whether plaintiffs released assets or dividends which might have been secured and applied upon payment of the claim, for, as before stated, it is conceded that the effect of the transaction was to secure and apply towards the liquidation of the claim the full amount, if not a greater amount than would have been obtained had the claims been permitted to draw dividends. The entire argument of defendants rests upon the simple proposition that the agreement to withdraw the claim and not to participate in dividends constituted a release of the principal, and consequently of the co-sureties. The argument is based upon a wrong assumption as to facts. The transaction referred to amounted simply to an exchange of securities or available assets. If, by releasing the right to participate in the dividend, the plaintiffs procured other personal property, which, upon being converted into cash, amounted to practically the same amount, or more than they would have procured or obtained from dividends, then the transaction was nothing more nor less than a payment, to all intents and purposes, of the same force and effect as though the claims had been

permitted to participate in the course of administration. Plaintiffs' relation to defendants with respect to such property was that of trustees, and they were only chargeable with good faith and reasonable care to the extent of the value of the property secured by them, and good faith on their part is not questioned on this appeal.

Judgment affirmed.

On November 25, 1904, the following opinion was filed:

LEWIS, J.

A reargument having been granted upon the claim that the court had misapprehended the facts and misapplied the law to the facts as stated in the previous decision, we have made a re-examination of the case.

The question before the court is not whether the plaintiffs made an advantageous bargain when they withdrew their claims against the Baker estate and received certain property from the heir in lieu of dividends. No question is raised as to the good faith of the plaintiffs in entering into the arrangement. The question is not whether plaintiffs fully accounted to defendants for their stewardship of the property so received, nor are we called upon to review any of the rulings of the trial court upon that branch of the case, which was fully litigated below. In defendants' original brief (page 14) it was stated that the only material question before the court was the meaning and legal effect of the written instrument executed by plaintiffs and filed in the court of Racine county, Wisconsin, on October 30, 1893, which is set forth in the former opinion and described as the release. At the previous hearing defendants insisted, and they now insist, that the claims of plaintiffs became merged in the judgment against the estate; that such judgment was based upon the implied contract existing between plaintiff and defendant sureties and their principal; that upon Mr. Baker's death his estate became subrogated in his place as principal, and that when the claims were withdrawn, and the decree of distribution was entered, conveying the property of the estate to the heir, it amounted to a satisfaction of the claims against the estate; that the estate was thereby discharged, which amounted to a release of the principal, and consequently a release of defendants as co-sureties.

The former decision was placed upon the ground that the transac-

tion did not amount to a release of the principal, but that it was, in effect, an interchange of securities. Or, to go a step further, it practically amounted to a cash payment by the estate. While the former decision was placed upon the principle that the transaction amounted to no more than a surrender of the right to participate in the dividends arising from the administration of the assets then within the jurisdiction of the court, in consideration of other assets which plaintiffs received, we may go a step further and concede that the instrument of release, when taken in consideration with the judgment of the court, amounted to a release of the estate for all time, so far as it might be administered by such court. But if such judgment had the effect claimed for it, whether it would be binding upon plaintiff in another jurisdiction, where the estate was being administered with reference to other property, is a question we need not determine. However, such release and judgment did not have the effect of releasing defendants as co-sureties, nor was there any satisfaction of or release of the debt. Plaintiffs, when they paid the amount of the obligation of the bond, were authorized to call upon defendants immediately for contribution, without proceeding against the guardian's estate, or they might pursue both remedies at once. Defendants were in no position to demand of plaintiffs that they take any particular course to obtain the property from the estate, but they were not required to sit still and see the assets of the estate dissipated in the course of administration. The relation between the co-sureties was of an equitable nature. If either one voluntarily took steps which resulted in securing a payment either directly or indirectly, all that could be required of him under the equitable relations existing between them was to make a proper accounting of the proceeds. If the estate had paid plaintiffs' claims in full, that would have discharged the obligation between the sureties, but plaintiffs were not able to obtain payment in full. They received property to be applied in payment, and in respect to the disposition of that property they occupied the relation of trustees to their co-sureties, and the only right which defendants have is to call them to account with respect to their stewardship concerning that property.

We do not think the effect of the release and entry of judgment in the Racine county court can be construed as argued by defendants. After the decease of the principal, his estate did not become subrogated

in his place as principal. While true the principal had passed out of existence, and all that remained which could meet the obligations of the bond assumed by him was his estate, yet it does not follow that his estate became the principal. If the judgment could be construed as a satisfaction in full, then of course the debt would be paid and defendants released. Such, however, is not the case. There was neither payment nor release within the ordinary meaning of that term.

The former decision is adhered to.

The guardian of certain minors having defaulted upon his bond, a portion of the sureties paid to the obligees the amount of the liability, and filed their claim against the estate of the deceased principal, and then entered into a contract with the heir of the principal whereby they withdrew their claims from the estate without participating in dividends, and received in lieu thereof certain personal property and securities in full satisfaction of their claim as against the estate. Such sureties then converted the property so received into cash, applied it upon the indebtedness, and commenced this action against their co-sureties to recover their portion of liability upon the bond.